UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRE SIMS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MIDLAND FUNDING LLC; and<br>GORDON AYLWORTH & TAMI PC,<br><br>　　　　　Defendants. | C20-1230 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion for partial summary judgment ("MPSJ"), docket no. 20, filed by Plaintiff Andre Sims, and cross-motions for summary judgment, docket nos. 25 & 27, filed by Defendants Gordan Aylworth & Tami PC ("GAT") and Midland Funding LLC ("Midland"). Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order:

**Background**

In late October 2019, Midland, a registered collection agency, brought a debt-collection action against Plaintiff in a Washington court, seeking $3,455.13 plus costs and interest related to Plaintiff's overdue Citibank credit account. *See Midland Funding, LLC v. Sims*, King County District Court Case No. 19CIV15376KCX

ORDER - 1

1  (complaint attached as Ex. A to Anderson Decl. (docket no. 20-2 at 4–5)).

2  On November 7, 2019, Midland served Plaintiff, who lives and works as a pastor
3  in Federal Way, Washington, with copies of the summons and complaint.  Sims Decl. at
4  ¶¶ 2–3 (docket no. 20-1).  Plaintiff understood that Midland was attempting to collect on
5  a Citibank credit card debt that he had "let lapse."  *Id.* at ¶ 6.

6  On November 20, 2019, Plaintiff called GAT, the law firm representing Midland
7  in the state court action.  *Id.* at ¶ 7.  A GAT representative confirmed that Plaintiff owed a
8  balance of "$3,598.13 with $143 [in] court costs which have been incurred and may or
9  may not be ordered by the court."  *See* Call Transcript, Ex. B to Anderson Decl. (docket
10 no. 20-2 at 8).  According to the transcript of the call, Plaintiff said that he wanted to
11 "make some kind of payment arrangements to pay off this debt to resolve or at least move
12 forward with this summons that [he had] received."  *Id.*  The GAT representative offered
13 to "set up either a monthly payment plan or a lump sum settlement."  *Id.*  Plaintiff agreed
14 to make a $65 payment that day, or at least by the end of November 2019, and then make
15 $200 monthly payments, starting in December 2019 and going forward.  *Id.* at 10.
16 Plaintiff was also asked if he would sign a stipulated judgment, demonstrating to the state
17 court that the parties had an active payment plan in place and allowing Midland to
18 "freeze interest on [Plaintiff's] account, mak[ing] it a little bit easier for [him] to get it
19 paid off."  *Id.*

20

21

22

23

ORDER - 2

Plaintiff's memory of that phone call varies slightly from the call transcript.[1] He remembers agreeing to pay $300 per month (instead of $200 per month), but he did not remember agreeing to make a $65 payment. *See* Sims Decl. at ¶ 8. Instead, Plaintiff understood that he did not need to take any further action until GAT sent him "some type of paperwork." *Id.*

On November 21, 2019, GAT sent Plaintiff a letter and a copy of the proposed Stipulated Judgment, which Sims was supposed to sign and return to GAT. GAT Letter, Ex. C to Anderson Decl. (docket no. 20-2 at 13–17). The proposed Stipulated Judgment showed a judgment amount of $5,618.13, which included a principal amount of $3,455.13 and costs in the amount of $163. *Id.* at 16.[2] The proposed Stipulated Judgment also provided for post-judgment interest at the rate of nine percent per year. *Id.*

On December 10, 2019, GAT sent Plaintiff another letter, stating that GAT had "not received [Plaintiff's] scheduled 11/27/19 payment in the amount of $65.00," and that "[s]o far, [GAT] ha[d] received $0.00 in payments toward the agreed upon Stipulated Judgment balance" of $3,598.13. GAT Letter, Ex. D to Anderson Decl. (docket no. 20-2 at 19). Plaintiff was directed to contact GAT to avoid being in default of the agreement. *Id.* Plaintiff apparently never received GAT's letters, or even noticed that he never

---

[1] Plaintiff does not dispute the authenticity of the call transcript produced by GAT, acknowledging that he must have made the transcribed statements. *See* Sims Decl. at ¶ 8.

[2] Apart from the fact that the total judgment amount should have been $3,618.13 (not $5,618.13), GAT had also told Plaintiff on the phone that he owed $3,598.13 total (not $3,618.13), which included $143 in court costs (not $163). *See* Call Transcript, Ex. B to Anderson Decl. (docket no. 20-2 at 8); *see also* GAT Letter, Ex. D to Anderson Decl. (docket no. 20-2 at 19).

ORDER - 3

received them, as Plaintiff states that he was busy with church activities during the holiday season in late 2019.  Sims Decl. at ¶ 12.  Plaintiff nevertheless concedes that he never made any payment in connection with the parties' settlement agreement, he never responded to GAT's letters, and he never otherwise communicated with Defendants through the end of 2019.  *See id*. ¶¶ 9–16.

On December 30, 2019, Defendants filed a motion for default judgment in the state court action.  *See* Motion for Default Judgment, Ex. E to Anderson Decl. (docket no. 20-2 at 21).  In support of that motion, a GAT attorney filed a declaration stating that "[m]ore than 20 days ha[d] elapsed since [Plaintiff] was served" and that Plaintiff "ha[d] not filed an appearance and has not filed or served any pleading."  *Id.* at 22.  On February 6, 2020, the state court entered default judgment against Plaintiff in the amount of $3,455.13 plus $163 in costs and post-judgment interest.  *Id.* at 24–25.

In May 2020, GAT sent Plaintiff's employer, Christ the King Bible Fellowship, a letter and a copy of the Writ of Garnishment.  Letter, Ex. B to Complaint (docket no. 1-1); Writ of Garnishment, Ex. F to Anderson Decl. (docket no. 20-2).  In June 2020, Plaintiff's wages were garnished, triggering a review process by the church's board of elders.  Sims Decl. at ¶ 5(c).  In addition to his garnished wages, Plaintiff incurred about $20 in out-of-pocket expenses, including travel and copy expenses.  *Id.*  Plaintiff also "sought legal counsel to determine what [his] rights and responsibilities were."  *Id.*

In August 2020, Plaintiff filed this action, asserting several claims against Defendants under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and Washington's Consumer Protection Act ("CPA"), chapter 19.86

ORDER - 4

RCW, alleging per se violations of Washington's Collection Agency Act ("CAA"), chapter 19.16 RCW.  Specifically, Plaintiff asserts: (1) a violation of § 1692e for a "false, deceptive, or misleading representation" in a debt-collection action, including falsely representing the "character, amount, or legal status of a debt" under § 1692e(2); (2) a violation of § 1692f for use of "unfair or unconscionable means to collect or attempt to collect any debt";[3] (3) a violation of RCW 19.16.250(21) for collecting an unauthorized sum, including attorneys' fees in connection with the default judgment; (4) a violation of RCW 19.16.250(15) for misrepresenting to Plaintiff that they were entitled to collect an unauthorized sum; and (5) a claim for injunctive relief.  Complaint (docket no. 1-1). Plaintiff has moved for partial summary judgment on Defendant's liability as to all substantive claims, docket no. 20,[4] while Defendants have moved for summary judgment on both liability and damages, docket no. 25 & 27.

**Discussion**

    **1.**    **Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it

---

[3] The Court rejects Defendants' assertion that Plaintiff failed to plead claims under § 1692e(2) or § 1692f. *Compare* Complaint at ¶¶ 21–26, *with* GAT Response to MPSJ (docket no. 21 at 3 n.1).

[4] Plaintiff has not moved on his claim for injunctive relief.  *See* MPSJ (docket no. 21); Reply (docket no. 24).

ORDER - 5

might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257.

### 2. Plaintiff's Appearance in the State Court Action

All of Plaintiff's FDCPA and CPA claims rest on whether Defendants misrepresented to a Washington court that Midland was entitled to default judgment in the debt-collection action, without serving Plaintiff with notice of the motion for default judgment pursuant to Washington Superior Court Civil Rule ("CR") 55. To determine whether Plaintiff was entitled to notice, the Court must first decide whether Sims "appeared" in the underlying action. Under Washington law,

> Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default . . . at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default . . . [is] filed is not entitled to notice of the motion . . . .

CR 55(a)(3). CR 4 further requires that "[a] notice of appearance, if made, shall be in writing, . . . signed . . ., and . . . served upon the person whose name is signed on the summons." CR 4(a)(3). RCW 4.28.210 provides that "[a] defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance." *Id*.

Because default judgments are generally disfavored, a defendant "need not strictly follow CR 4(a)(3) or RCW 4.28.210." *Servatron, Inc. v. Intelligent Wireless Prods., Inc.*, 346 P.3d 831, 835 (Wash. Ct. App. 2015); *see Morin v.*

ORDER - 6

1  *Burris*, 161 P.3d 956, 964 (Wash. 2007) (explaining courts "do not exalt form over
2  substance and appearance may be accomplished informally").  Courts instead
3  examine "the defendants' conduct to see if it was designed to and, in fact, did
4  apprise the plaintiffs of the defendants' intent to litigate the case[]," at least "after
5  litigation was commenced."  *Morin*, 161 P.3d at 961–62.  In other words, a
6  defendant must "go beyond acknowledging that a *dispute* exists and instead
7  acknowledge that a dispute exists *in court*."  *Id.* at 962 (emphasis in original).
8     Washington appellate courts have held that "one phone call, supported by a
9  contemporaneous record, constitute[s] an informal appearance."  *See Sacotte*
10 *Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 177 P.3d 1147, 1150–51 (Wash. Ct.
11 App. 2008) (concluding an appearance was made when defense counsel made a
12 single post-litigation phone call to plaintiff's counsel) (citing *Old Republic Nat'l*
13 *Title Ins. Co. v. Law Office of Robert E. Brandt, PLLC*, 174 P.3d 133, 135–36
14 (Wash. Ct. App. 2007)); *see also Servatron*, 346 P.3d at 835–36 (appearance was
15 made where defendant's attorney contacted plaintiff's attorney by phone and email
16 and "debated matters related to litigation").
17    In this case, the parties do not dispute that Plaintiff made a single phone
18 call to GAT a few weeks after Midland filed the state court action.  *See* Call
19 Transcript, Ex. B to Anderson Decl. (docket no. 20-2 at 7–11).  The transcript of
20 the call makes clear that Plaintiff manifested an intent to settle the pending
21 lawsuit, as Plaintiff stated that he was seeking "to pay off this debt" and "to
22 resolve or at least move forward with this summons that [he] received."  *See id.* at
23

ORDER - 7

1  8.  GAT also acknowledged the lawsuit, including the $143 in "court costs which

2  have been incurred," and agreed to settle the dispute, assuming Plaintiff made

3  monthly payments and signed and returned the Stipulated Judgment.  *See id.* at 8–

4  10.[5]  GAT then sent Plaintiff the Stipulated Judgment and a follow-up letter,

5  acknowledging the parties' agreement.  *See* GAT Letters, Exs. C & D to Anderson

6  Decl. (docket no. 20-2).

7  Plaintiff admits that he failed to make a payment, return the Stipulated

8  Judgment, or otherwise communicate with Defendants in the six weeks that passed

9  between the parties' phone call on November 20, 2019, and the date the motion for

10  default judgment was filed on December 30, 2019.  *See* Sims Decl. at ¶¶ 9–16

11  (docket no. 20-1).[6]  Despite these failures, the Court concludes that Plaintiff's

12  phone call to GAT was sufficient to apprise Defendants of his intent to appear in

13  the underlying action, thereby entitling Plaintiff to notice of the motion for default

14  judgment under CR 55(a)(3).  *See Sacotte Constr.*, 177 P.3d at 1150–51; *see also*

15  *Dlouhy v. Dlouhy*, 349 P.2d 1073, 1075 (Wash. 1960) ("Certain it is that a

16  defendant may appear *pro se*, without an attorney."); *but see Seek Sys. Inc. v.*

---

[5] During the phone call, the GAT representative also learned where Plaintiff worked, his gross monthly take-home pay on average, his monthly rent or mortgage, and the name of his bank, and at the end of the call, the representative said "I'm pretty sure that takes care of everything on my end to get this agreement set up."  *See* Call Transcript, Ex. B to Anderson Decl. (docket no. 20-2 at 9–10).

[6] Plaintiff states that he never received GAT's mailings, *see* Sims Decl. at ¶ 14, and that he "did not notice that [he] had not received the paperwork from GAT," as he was "occupied with church-related matters" during the holiday season in late 2019.  *Id.* at ¶ 12.

ORDER - 8

1  *Lincoln Moving/Glob. Van Lines, Inc.*, 818 P.2d 618, 621 (Wash. Ct. App. 1991)

2  (assuming "that a single phone call can constitute a notice of appearance," but

3  concluding that defendant's call was insufficient, as defendant took no further

4  action for 14 months).  The Court therefore turns to whether Defendants'

5  misrepresentation, that Midland was entitled to default judgment without notice,

6  when it was not, amounted to FDCPA or CPA violations.

   3.   **Defendants' Liability Under the FDCPA and the CPA**

   A.   **FDCPA Violations**

9  Even if Plaintiff appeared in the underlying action, the Court must also decide

10 whether Defendants' misrepresentation was sufficiently material to trigger liability under

11 the FDCPA.  *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir.

12 2014) ("[F]alse but non-material representations are not likely to mislead the least

13 sophisticated consumer and therefore are not actionable." (quoting *Donohue v. Quick

14 Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010))).  Still, "the broad remedial purpose of

15 the FDCPA is concerned primarily with the likely effect of various collection practices

16 on the minds of unsophisticated debtors." *Clark v. Capital Credit & Collection Servs.,

17 Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).[7]

---

[7] Defendants do not dispute that they are "debt collector[s]" under 15 U.S.C. § 1692a(6) and "collection agenc[ies]" under RCW 19.16.100(4), or that Plaintiff is a "debtor" as defined under RCW 19.16.100(8). *See* docket nos. 21, 23, 25, & 27.  Although Defendants argue, in a conclusory fashion, that Plaintiff has presented no evidence that the amount owed to Midland arose from a "debt," as defined under 15 U.S.C. § 1692a(5), the record shows that the debt at issue is a consumer "debt," as used in both 15 U.S.C. § 1692a(5) and RCW 19.16.100.  *See* Writ of Garnishment, Ex. F to Anderson Decl. (docket no. 20-2 at 27) ("This garnishment is based on a judgment or order for consumer debt.").

ORDER - 9

In this circuit, at least two cases have concluded that the failure to serve a copy of a motion for default judgment in violation of CR 55, violates the FDCPA.  *See Weinstein v. Mandarich Law Grp., LLP*, No. C17-1897-RSM, 2018 WL 6199249, at *3 (W.D. Wash. Nov. 28, 2018), *aff'd by* 798 F. App'x 88 (9th Cir. 2019) (affirming grant of plaintiff's motion for partial summary judgment on FDCPA claim); *see also Mitchell v. Patenaude & Felix APC*, No. C19-809-JLR-TLF, 2019 WL 4043974, at *5 (W.D. Wash. July 15, 2019), *report & recommendation adopted*, 2019 WL 4034958 (W.D. Wash. Aug. 27, 2019).

Plaintiff asserts that Defendants violated § 1692e(2) by falsely representing to the state court that Midland was entitled to default judgment without serving notice of the motion for default judgment, despite Plaintiff's informal appearance in the underlying action.  Plaintiff also asserts that Defendant's garnishment of his wages, based on an unlawfully obtained default judgment, violates § 1692f for using "unfair or unconscionable means" to collect a debt, including collecting amounts that were not "expressly authorized by [the] agreement . . . or permitted by law." 15 U.S.C. § 1692f(1).  The Court agrees.

There is no dispute that Defendants failed to provide Plaintiff with notice of the motion for default judgment and represented to the state court that no notice was required, *see* Motion for Default Judgment, Ex. E to Anderson Decl. (docket no. 20-2), even after Plaintiff had informally appeared, *see* Call Transcript, Ex. B to Anderson Decl. (docket no. 20-2).  Nor is there any dispute that Defendants garnished Plaintiff's wages after prevailing on that motion for default judgment.  *See* Writ of Garnishment, Ex. F to

ORDER - 10

Anderson Decl. (docket no. 20-2).  Defendants' actions violate § 1692e(2) and § 1692f(1).  *See Weinstein*, 798 F. App'x at 91 (concluding that defendant violated § 1692f where the default judgment did not provide the required notice under CR 55); *see also Mitchell*, 2019 WL 4043974, at *5–6 (concluding plaintiff's allegations were sufficient to plausibly assert § 1692e and § 1692f violations).  Plaintiff is entitled to summary judgment on the FDCPA claims as a matter of law.

        **B.**     **CPA Violations**

Defendants' actions also violate the CPA, chapter 19.86 RCW, through violations of the CAA, chapter 19.16 RCW.  To prevail on a CPA claim, a plaintiff must establish the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  "When a violation of debt collection regulations occurs," including FDCPA and CAA violations, such a violation "constitutes a per se violation of the CPA."  *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009); *see* RCW 19.16.440 ("[T]he commission . . . of an act or practice prohibited by [the CAA] . . . [is] declared to be [an] unfair act[] or practice[] . . . in the conduct of trade or commerce for the purpose of the application of the [CPA] found in chapter 19.86 RCW").

ORDER - 11

Defendants undisputedly garnished from Plaintiff's wages the following amounts: $163 in court costs ($20 more than what was represented to Plaintiff),[8] $61.56 in post-judgment interest, and $22.20 in garnishment costs. *See* Writ of Garnishment, Ex. F to Anderson Decl. (docket no. 20-2 at 28). In light of Defendants' misrepresentations to Plaintiff and the state court, resulting in an unlawfully obtained default judgment, Defendants were not authorized to garnish such amounts. Defendants' actions violated the CAA, including violations of RCW 19.16.250(15) and (21).[9]

Because FDCPA and CAA violations constitute per se violations of the CPA, the first three elements of the *Hangman Ridge* test are satisfied here. *See Panag*, 204 P.3d at 897; *accord Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013) (holding that a CPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act not regulated by statute but in violation of public interest"); *see also Hoffman v. Transworld Sys. Inc.*, 806 F. App'x 549, 552 n.3 (9th Cir. 2020) (concluding that "to the extent an FDCPA violation may serve as the basis of a per se CPA claim, . . . then an FDCPA violation per se satisfies the 'trade or commerce' element, along with the 'unfair

---

[8] GAT twice represented to Plaintiff that he owed $3,598.13 total, with $143 in court costs. *See* Call Transcript, Ex. B to Anderson Decl. (docket no. 20-2 at 8); GAT Letter, Ex. D to Anderson Decl. (docket no. 20-2 at 19).

[9] RCW 19.16.250(15) prohibits "[c]ommunicat[ing] with the debtor and represent[ing] . . . that the existing obligation . . . has been increased . . . when in fact such fees or charges may not legally be added to the existing obligation." RCW 19.16.250(21) prohibits "[c]ollecting . . . in addition to the principal amount of a claim any sum other than allowable . . . fees expressly authorized by statue."

ORDER - 12

or deceptive' and 'public interest' elements"). With respect to the "public interest" element, the CPA provides that "a claimant may establish that the act or practice is injurious to public interest because it . . . [v]iolates a statute that incorporates" the CPA or because it "[v]iolates a statute that contains a specific legislative declaration of public interest impact." RCW 19.86.093(1) & (2); *see also* RCW 19.16.440 (providing that CAA violations per se violate the CPA); *see* Laws of 2011, 1st Spec. Sess., ch. 29, § 3 (declaring that RCW 19.16.250 "is necessary for the immediate preservation of the public peace, health, or safety").

The record shows that the injury and causation elements are also satisfied. *See Hangman Ridge*, 719 P.2d at 533; RCW 19.86.090 ("Any person who is injured in his or her . . . property by a [CPA violation] . . . may bring a civil action . . . to enjoin further violations, to recover the actual damages sustained . . . , together with the costs of the suit, including a reasonable attorney's fee"). In addition to the unauthorized amounts that Defendants garnished from Plaintiff's wages, Plaintiff states that he sought legal counsel to determine his rights and responsibilities and incurred other expenses as a result of Defendants' deception. Sims Decl. at ¶ 5(c); *see Panag*, 204 P.3d at 902 (concluding legal investigation costs sufficiently establish injury). Plaintiff is entitled to summary judgment on his CPA claims as a matter of law.[10]

---

[10] Because the Court concludes that Defendants' actions amounted to FDCPA and CPA violations as a matter of law, it denies Defendants' motions for summary judgment, docket nos. 25 & 27, as to whether Plaintiff filed this action in bad faith or for the purpose of harassment. *See* 15 U.S.C. § 1692k(a)(3).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's motion for partial summary judgment, docket no. 20, is GRANTED;

(2) Defendants GAT's and Midland's motions for summary judgment, docket nos. 25 & 27, are DENIED;

(3) The parties are ORDERED to engage in mediation to resolve the amount of actual damages incurred by Plaintiff and any other issue left unresolved by this Order. *See* Local Civil Rule 39.1. A letter of compliance shall be FILED on or before **July 30, 2021**. The parties may seek relief from this requirement by motion and upon a showing of good cause. In the event that this matter is not settled, the matter shall proceed to trial, which remains scheduled for August 30, 2021, solely on the issue of damages and any other relief sought; and

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 20th day of April, 2021.

Thomas S. Zilly
United States District Judge